**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SAMUEL RICHARD MILLS,

        Plaintiff,

v.                                  Case No.: 3:25-cv-917-WWB-LLL

WALLACE F. KITCHINGS and KOBE A.
KIMBLE,

        Defendants.

_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion to Dismiss (Doc. 20) and Plaintiff's Response in Opposition (Doc. 24).[1]  For the reasons set forth below, Defendant's Motion will be granted.

## I.  BACKGROUND

On January 1, 2025, Plaintiff, Samuel Richard Mills, was pulled over by Defendant Kobe A. Kimble for a faulty break light.  (Doc. 6, ¶ 9).  During the stop, Plaintiff called his mother—who owned the vehicle—to obtain the insurance information.  (*Id.* ¶¶ 11–12).  While Officer Kimble waited for the insurance information and prepared a citation, a K-9 unit approached the area.  (*Id.* ¶¶ 13–14).  Plaintiff saw the K-9 officers give the K-9 a treat before and after walking around Plaintiff's vehicle, which Plaintiff alleges was a motivational tactic to encourage the K-9 to alert regardless of the actual presence of

---

[1] Plaintiff's Response in Opposition fails to comply with this Court's January 13, 2021 Standing Order.  In the interests of justice, the Court will consider the filing, but any further failures to comply with all applicable rules and orders of this Court, including the Standing Order, may result in the striking or denial of filings without notice or leave to refile.

narcotics.  (*Id.* ¶¶ 15–16).  After the K-9 circled the vehicle and alerted officers, Kimble asked Plaintiff to exit the vehicle and told Plaintiff that he was going to be searched.  (*Id.* ¶¶ 18–20).  Plaintiff did not consent to the search of his person.  (*Id.* ¶ 20).

During the search, Plaintiff alleges that he was cooperative but repeatedly requested not to have his private area touched, which Kimble informed him was going to happen incident to the search.  (*Id.* ¶¶ 22–28).  Kimble informed Plaintiff that he would be put into handcuffs if he continued to object and ultimately Kimble and two unknown officers did handcuff Plaintiff when he continued to object to the "aggressive prob[ing]" of his genitals.  (*Id.* ¶¶ 30–44).  Plaintiff alleges that he was highly distressed during the search and repeatedly cried out "in a high-pitched voice" for Kimble to cease the search of his private area, but that his request was continually denied.  (*Id.* ¶¶ 24, 26, 32, 36–44).  Kimble did not locate any contraband on Plaintiff during the search.  (*Id.* ¶ 45).

Following the search, Plaintiff informed Kimble that he would file a lawsuit, asked if the officers were planning to kill him, stated that officers were ganging up on him, and called Kimble "a faggot."  (*Id.* ¶¶ 46–48).  When Kimble told Plaintiff to be quiet because "he was talking too much," Plaintiff informed Kimble that he did not care because he was exercising his right to free speech.  (*Id.* ¶ 49).

Kimble also tested the contents of Plaintiff's soda can and his saliva, the salvia test returned negative.  (*Id.* ¶¶ 54, 57).  At this time, Plaintiff asked Kimble to contact his social worker because "he had a mental problem," which he later specified was Aspergers syndrome.  (*Id.* ¶¶ 56, 60).  Ultimately, officers did not locate any illegal substances in the vehicle or on Plaintiff or his passenger.  (*Id.* ¶ 66).  Plaintiff was arrested and charged with resisting without violence based on his conduct during the search.  (*Id.* ¶¶ 68–74).  Plaintiff

was transported to a detention facility, where he was held until bond could be posted.  (*Id.* ¶¶ 79, 82).

As a result of the search and arrest, Plaintiff alleges federal claims against Kimble for unreasonable search, false arrest, and First Amendment retaliation pursuant to 42 U.S.C. § 1983, and a state law claim for negligence *per se*.  (*Id.* ¶¶ 83–97; 113–123; 138–147; 163–172).  Plaintiff also alleges claims against Defendant Wallace F. Kitchings in his official capacity as the Sheriff of Columbia County, Florida.  (*Id.* ¶ 5).  Specifically, Plaintiff alleges official capacity claims against Kitchings for unreasonable search, false arrest, and First Amendment retaliation pursuant to 42 U.S.C. § 1983.  (*Id.* ¶¶ 98–112; 124–137; 148–162).  Kitchings moves to dismiss the claims against him for failure to state a claim.  (*See generally* Doc. 20).

## II.    LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).  Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Furthermore, "[t]o survive a motion to dismiss, a complaint

3

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    DISCUSSION

Kitching argues that Plaintiff's claims against him fail to plausibly allege municipal liability in accordance with *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents." *Vineyard v. Cnty. of Murray*, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993) (quotation omitted).  Thus, Plaintiff's claims against Kitching in his official capacity are municipal liability claims against Columbia County.  "For § 1983 liability to attach to a municipality, 'a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *McDonough v. Mata*, 489 F. Supp. 3d 1347, 1358 (S.D. Fla. 2020) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).  To establish a county's policy, a plaintiff may "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  "To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute

4

a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quotation omitted).

Alternatively, the Supreme Court recognizes "limited circumstances" under which a municipality's "failure to train" can give rise to *Monell* liability. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)

In Count II, which alleges a violation of Plaintiff's Fourth Amendment rights against unreasonable searches, Plaintiff alleges that the Columbia County Sherriff's Office ("**CCSO**") "has an unofficial custom and/or policy to allow its deputies to conduct strip searches, touching people's private parts, in public, and in an unreasonable manner, without exigent circumstances." (Doc. 6, ¶ 100). In support, Plaintiff notes the officers' failure to intervene and participation in the strip search conducted on him and alleges that CCSO "trains its officers in a *de jure* manner" and that the policy "has resulted in many illegal searches." (*Id.* ¶¶ 101–103). Plaintiff does not make any further allegations regarding the training or other incidents.[2]

---

[2] Plaintiff provides links to news articles in his Response in Opposition regarding other purported instances of similar conduct. Even if the Court could consider the contents of such articles, *see Poulin v. Bush*, 650 F. Supp. 3d 1280, 1304–05 (M.D. Fla. 2023), it declines to do so as it is well-settled that parties cannot amend their pleadings

The allegations set forth in, and incorporated into, Count II focus almost exclusively on the incident involving Plaintiff in this case. "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1311 (11th Cir. 2011). Since the Eleventh Circuit has held that a single incident is insufficient to establish a claim, a pleading that focuses almost exclusively on the alleged violation in the pleading is likewise insufficient. *See Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 673 (11th Cir. 2016); *see also Derks v. Bassa*, No. 22-13202, 2023 WL 5664197, at *2 (11th Cir. Sept. 1, 2023); *Reed v. Waters*, No. 3:24-cv-463, 2024 WL 4529253, at *5–6 (M.D. Fla. Oct. 18, 2024); *Baker v. Viehmann*, No. 8:21-cv-2851, 2022 WL 22568617, at *2 (M.D. Fla. May 18, 2022). Although Plaintiff argues that allegations that the officers were acting pursuant to a protocol are sufficient, (*see* Doc. 24 at 6 (citing *Andre v. Clayton Cnty.*, 148 F.4th 1282, 1300 (11th Cir. 2025)), no such allegations are contained within the Complaint. Finally, a vague reference to "many illegal searches" without additional details fails to plausibly allege a policy or custom under *Monell*. *See Williams v. Miami-Dade Cnty.*, No. 25-CV-21662, 2025 WL 2735419, at *13 (S.D. Fla. Sept. 2, 2025); *Gaviria v. Guerra*, No. 17-23490-CIV, 2018 WL 1876124, at *6 (S.D. Fla. Apr. 19, 2018); *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321–23 (S.D. Fla. 2015).

To the extent Plaintiff also alleges a failure to train theory in Count II, his claim is based on the allegations that Kitchings failed to train CCSO officers regarding the proper manner for conducting strip searches in public, that Field Training Officers trained CCSO

---

"via a response to a motion to dismiss." *Llauro v. Tony*, 470 F. Supp. 3d 1300, 1313 n.6 (S.D. Fla. 2020) (quotation omitted).

officers in a "*de jure* manner . . . contrary to Florida Statute, the Commission on Accreditation for Law Enforcement Agencies ("CALEA") and to CCSO's *de facto* orders and policy," and that the need for training was "clearly obvious" because it is likely that officers will have to conduct such searches.  (Doc. 6, ¶¶ 102, 107–108).  As set forth above, broadly asserting that CCSO conducts "many illegal searches" is insufficient to allege Kitchings was on notice regarding the need to train deputies regarding public strip searches.  *See Frakes v. City of Boynton Beach*, No. 25-cv-80396, 2025 WL 3905168, at *11 (S.D. Fla. Oct. 17, 2025), *report and recommendation adopted*, 2026 WL 304399 (S.D. Fla. Feb. 5, 2026).  Furthermore, although in some cases the need to train officers may be "so obvious" that the plaintiff need not allege a pattern of prior violations, *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997) (quotation omitted), conclusory allegations that the need is obvious fail to meet the required pleading standards.  *See Nelson v. Jack. Sheriff's Off.*, No. 3:23-cv-343, 2024 WL 3952426, at *1– 2 (M.D. Fla. Aug. 26, 2024); *Thornton v. Chronister*, 309 F. Supp. 3d 1196, 1204 (M.D. Fla. 2018).  Here, Plaintiff has failed to allege any factual support for his claims regarding the lack of training or the inadequacy of the training.  In fact, Plaintiff makes contradictory allegations that the officers received either no training or were trained in a manner contrary to the law.  And while Plaintiff includes allegations regarding statements made by Kimble and other officers during the search, he fails to state how any of these statements indicate a lack of training in proper searches.  Instead, most of the alleged statements are that the officers are going to conduct a search, that checking Plaintiff's private areas is necessary to the search, and that Plaintiff needs to cooperate.  (*See* Doc. 6, ¶¶ 23, 25–26, 28, 30, 35, 39, 41).  Based on the allegations of the Complaint, the Court

does not find that Plaintiff has adequately alleged sufficient facts, even taking all inferences in his favor, to state that the need to train was obvious in this case. *Cf. Reed*, 2024 WL 4529253, at *8–9 (holding that the plaintiff adequately alleged a claim for failure to train based solely on the facts of his case where he alleged that the officers received no training, which was supported by other factual allegations in the complaint, but noting that it was "a close call"). Therefore, Count II will be dismissed.

In Count IV, Plaintiff alleges a claim against Kitchings for false arrest. Plaintiff alleges that the CCSO has an unofficial policy or custom for permitting officers to arrest individuals for resisting without violence when they only verbally resist. (*Id.* ¶ 126). In support, Plaintiff again points to the lack of objection of officers on the scene and the alleged "assertions" by "unidentified CCSO officers . . . that [Plaintiff's] words in some manner obstructed Officer Kimble's search." (*Id.* ¶ 127). The contents and context of these statements are not clearly alleged in the factual allegations or in Count IV. Plaintiff also alleges that "CCSO has a publicly documented history of its officers arresting individuals for resisting officers without violence, based upon their mere objections to being subjected to search[]." (*Id.* ¶ 128). The facts and circumstances of these other events are not alleged in the Complaint. As set forth above with respect to Count II, Plaintiff's almost exclusive reliance on the facts and circumstances of his own case and a vague reference to other, presumably similar, incidents are insufficient to meet the pleading standard for a *Monell* claim.

Plaintiff also appears to raise a failure to train claim in Count IV. In support he alleges that Kitching failed to train officers on what consists of resisting an officer without violence and that the need for such training is clear. (*Id.* ¶¶ 132–133). Similar to Count

II, Plaintiff's conclusory allegation that there is a "publicly documented history" of such arrests fails to plead a factual basis from which the Court can infer that Kitchings was on notice of the need for training.  Furthermore, to the extent Plaintiff intends to rely on the facts of his case alone and the "so obvious" exception, "[i]t is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries to citizens. . . . *City of Canton* also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision."  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (quotation omitted).  Plaintiff fails to allege any factual details that permit a reasonable inference that the highly predictable consequences of CCSO's failure to train on the specifics of the crime of resisting without violence would result in constitutional violations.  *See Davis v. City of Montgomery*, 220 F. Supp. 3d 1275, 1284–85 (M.D. Ala. 2016).  Therefore, Plaintiff fails to sufficiently allege a *Monell* claim in Count IV and it will also be dismissed.

Finally, in Count VI, Plaintiff alleges a First Amendment claim against Kitchings.  Plaintiff alleges that CCSO has a policy or custom of allowing officers to conduct retaliatory arrests against individuals exercising their First Amendment rights.  (Doc. 6, ¶ 150).  Again, Plaintiff supports his claim by pointing to the lack of objection from the officers at the scene and "a publicly documented history" of such arrests.  (*Id.* ¶¶ 151–152).  Plaintiff also repeats his allegations regarding the failure to train "officers regarding what constitutes resisting an officer without violence, despite his knowledge that CCSO officers need specific training and supervision in First Amendment rights."  (*Id.* ¶ 156).  Similar to Count IV, Plaintiff basis his failure to train claims on conclusory allegations of "publicly documented incidents" and a "clear" need for training based on the likelihood

9

that officers will encounter verbal objections to their authority. (*Id.* ¶¶ 156–157). For the reasons already explained with respect to Counts II and IV, such allegations fall short of pleading a claim under *Monell*. Count VI will also be dismissed.

"A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). Plaintiff has neither filed a motion for leave to further amend his pleading nor requested such relief in his Response. Nevertheless, because it is not clear that amendment would be futile, the Court will permit Plaintiff an opportunity to amend his pleading as to his claims against Kitchings. In doing so, Plaintiff shall include only one theory of liability—i.e., practice and custom or failure to train—in each count. *See Reed*, 2024 WL 4529253, at *4–5.

## IV. CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 20) is **GRANTED**.

2. Counts II, IV, and VI of the Complaint (Doc. 6) are **DISMISSED without prejudice**.

3. On or before **April 14, 2026**, Plaintiff may file an amended pleading with respect to his claims against Defendant Kitchings to correct the deficiencies noted herein. The failure to timely do so may result in the dismissal of all claims as to Defendant Kitchings without further notice.

**DONE AND ORDERED** in Jacksonville, Florida on April 1, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record